IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STACI R.,[1] | Case No. 6:24-cv-01849-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Staci R. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. For the reasons explained below, the Court reverses the Commissioner's decision and remands for the calculation and payment of benefits.

///

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

///

PAGE 2 – OPINION AND ORDER

## BACKGROUND

I.  **PLAINTIFF'S APPLICATIONS**

Plaintiff filed DIB[2] and SSI[3] applications on December 5, 2014. (Tr. 16, 59.) In her applications, Plaintiff alleged disability due to bipolar II disorder, attention deficit hyperactivity disorder ("ADHD"), severe social anxiety, depression, seasonal affective disorder, severe premenstrual syndrome, and severe migraines. (*Id*. at 59.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration. (*Id*. at 103, 117.) Plaintiff and an impartial vocational expert ("VE") appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on April 18, 2017. (*Id*. at 34-56.) On July 18, 2017, the ALJ issued a partially favorable written decision finding Plaintiff disabled as of December 5, 2014, her application date. (*Id*. at 12-26.) On June 4, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id*. at 1-6.)

///

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016 TAG, 2008 WL 4490024, at *4 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured ("DLI") of December 31, 2009 (Tr. 16, 611) reflects the date on which her insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that she was disabled on or before December 31, 2009, she is entitled to DIB. *See Truelsen v. Comm'r of Soc. Sec.*, No. 2:15-cv-2386-KJN, 2016 WL 4494471, at *1 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that [she] was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998))).

[3] "[T]he earliest an SSI claimant can obtain benefits is the month after which [s]he filed h[er] application[.]" *Schiller v. Colvin*, No. 12-771-AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23, 2013) (citation omitted).

PAGE 3 – OPINION AND ORDER

Plaintiff sought and obtained judicial review, and the Court remanded in December 2022 with instructions for the ALJ to (1) determine the onset date of Plaintiff's disabling impairment with the assistance of a medical expert; (2) reassess Plaintiff's subjective symptom testimony; and (3) reassess the lay witness testimony of Plaintiff's mother. (Tr. 714-24); *see Staci R. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01453-AA, 2022 WL 17485583, at *11 (D. Or. Dec. 7, 2022).

Accordingly, on March 23, 2023, the Appeals Council vacated the unfavorable portion of the Commissioner's decision and remanded to an ALJ for further proceedings and to issue a new decision relating to the period prior to December 5, 2014.[4] (Tr. 729.) On June 21, 2024, Plaintiff, medical expert Michael Greenberg, PsyD ("Dr. Greenberg"), and an impartial VE testified before an ALJ. (*Id*. at 631-69.) On July 11, 2024, the ALJ issued a partially favorable decision, again finding Plaintiff disabled as of December 5, 2014 but not prior to that date. (*Id*. at 610-21.) That decision became the final decision of the Commissioner and Plaintiff now seeks judicial review.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r of Soc. Sec. Admin*., 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the

---

[4] The Appeals Council's remand order referred to December 5, 2019 as the relevant date, but the ALJ correctly determined that was a "scrivener's error." (Tr. 673-74, 729.)

PAGE 4 – OPINION AND ORDER

claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

### III.   THE ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff was disabled. (Tr. 610-21.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2005, the alleged onset date. (*Id.* at 613.) At step two, the ALJ found that Plaintiff suffered from the following severe, medically determinable impairments: ADHD, bipolar type two disorder, and anxiety disorder not otherwise specified. (*Id.*)

At step three, the ALJ concluded that before December 5, 2014, Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.*) The ALJ then concluded that before December 5, 2014, Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels subject to the following nonexertional limitations: (1) understand, remember, carry out, and persist and simple routine repetitive tasks, (2) make simple

PAGE 5 – OPINION AND ORDER

work-related decisions, (3) perform work with few, if any, workplace changes, (4) perform no assembly line pace work, and (6) have no more than occasional interaction with coworkers and the general public. (*Id*. at 615.)

At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (*Id*. at 618.) At step five, the ALJ determined that Plaintiff was not disabled before December 5, 2014, because a significant number of jobs existed in the national economy Plaintiff could perform, including hotel/motel housekeeper, wall cleaner, and bagger. (*Id*. at 619.) The ALJ also determined that beginning on December 5, 2014, the severity of Plaintiff's impairments met the criteria of section 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (depressive, bipolar and related disorders) and she was therefore disabled as of that date. (*Id.*)

## DISCUSSION

Plaintiff argues on appeal that the ALJ erred by assigning no weight to testifying medical expert Dr. Greenberg's hearing testimony.[5] (Pl.'s Opening Br. ("Pl.'s Br.") at 3-13, ECF No. 14; Pl.'s Reply at 2-4, ECF No. 17.) For the reasons discussed below, the Court reverses the Commissioner's decision and remands for the calculation and payment of benefits.

**I.    TESTIFYING MEDICAL EXPERT'S OPINION**

Plaintiff argues the ALJ erred by assigning no weight to the testifying medical expert's opinion on remand. (Pl.'s Br. at 3-13.) The Court agrees.

///

///

---

[5] Plaintiff also argues that the ALJ failed to identify specific, clear, and convincing reasons supported by substantial evidence to discount Plaintiff's symptom testimony and erred by discounting the lay testimony of Plaintiff's mother but the Court does not reach those arguments herein. (*See* Pl.'s Br. at 13-18.)

PAGE 6 – OPINION AND ORDER

### A.     Applicable Law[6]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2001)). An ALJ may only reject a physician's "contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions, however, is insufficient: "The ALJ must do more than state conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs when [she] rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for [her] conclusion." *Id.* at 1012-13 (citation omitted).

---

[6] The recently amended regulations governing the evaluation of medical opinion evidence do not apply here because Plaintiff filed her applications prior to March 27, 2017. *See Woods v. Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022) (observing that "[t]he new regulations apply to [a claimant's Social Security case if] she filed her claim on or after March 27, 2017").

"Although [the reviewing court] will not fault the agency merely for explaining its decision with less than ideal clarity, we still demand that the agency set forth the reasoning for its decision in a way that allows for meaningful review." *Brown-Hunter*, 806 F.3d at 492 (simplified). "A clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on grounds invoked by the agency." *Id.* (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).

The ALJ must consider the medical record as a whole, rather than isolating a "specific quantum" of evidence to support the ALJ's conclusion. *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984); *see also Ghanim*, 763 F.3d at 1164 (holding cherry-picking is improper (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205-08 (9th Cir. 2001))); *Garrison*, 759 F.3d at 1009 (An ALJ "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by identifying a specific quantum of supporting evidence.") (citation omitted).

"[A]n ALJ may give greater weight to the opinion of a non-examining expert who testifies at a hearing subject to cross-examination." *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (citation omitted); *see also* see 20 C.F.R. § 404.1527(f)(2)(i) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation.").

**B.    Analysis**

The Court concludes that the ALJ erred by assigning no weight to the testifying medical expert's opinion on remand and that the ALJ's error was harmful.

The Court remanded this case on December 7, 2022, with instructions to "determine the onset date of Plaintiff's disabling impairment with the assistance of a medical expert." *Staci R.*,

PAGE 8 – OPINION AND ORDER

2022 WL 17485583, at *11. Dr. Greenberg testified as "an impartial and neutral" medical expert at Plaintiff's hearing to assist the ALJ in determining the onset date of Plaintiff's disability. (Tr. 642-56.) Dr. Greenberg testified that there was "sufficient objective evidence" in Plaintiff's medical record to allow him "to form medical opinions about the nature and severity of [Plaintiff]'s impairments during [the relevant] time period[.]" (*Id.* at 643.)

Dr. Greenberg testified that he reviewed Plaintiff's medical records and found that Plaintiff met paragraph A criteria for bipolar disorder, depressive disorder, anxiety disorder, and ADHD combined type. (*Id.* at 643-44.) With respect to paragraph B criteria, Dr. Greenberg testified that Plaintiff had a "moderate" limitation in her ability to understand, remember, or apply information, concentrate, persist, or maintain pace, and adapt or manage herself, and a "marked" limitation in her ability to interact with others. (*Id.* at 644-47.)

With respect to Plaintiff's ability to complete a normal workday and work week, Dr. Greenberg testified that "when fully and compliant with medication, I believe they would be able to engage with a full . . . work week" but only "with reasonable accommodations." (*Id.* at 650.) He clarified that "reasonable accommodations" would be necessary due to Plaintiff's "significant anxiety" and by reasonable accommodations he meant "stepping away for a brief period of time and collecting oneself and then returning." (*Id.*) Dr. Greenberg testified that Plaintiff would likely need fifteen to twenty minutes to address her symptoms before returning to work, but he was unable to testify about how frequently Plaintiff would need such a break in a normal workday. (*Id.* at 651.)

The ALJ assigned Dr. Greenberg's opinion "no weight" because she found that Dr. Greenberg did not understand the vocational language he used in his testimony and that his opinion was internally inconsistent:

PAGE 9 – OPINION AND ORDER

> [I]t was clear in his testimony that he did not understand the vocational language used under the Social Security regulations specific to mental residual functional capacity (MRFC). He went back and forth between "seriously" and "marked" when describing the claimant's mental limitations but stated that they did not preclude her from attending school, completing daily activities, and raising her children. Thus, Dr. Greenberg's opinion is given no weight as he was unable to offer a vocationally termed MRFC as he misunderstood "moderate" and "marked" as defined under the regulations. As well, his testimony was inconsistent because he opined that the claimant could have contact with the public and coworkers despite saying that she is markedly limited in social functioning, which is inherently inconsistent, thus given no weight.

(*Id.* at 617.)

The Court finds that the ALJ erred by assigning no weight to Dr. Greenberg's testimony based on his terminology. First with respect to the vocational language Dr. Greenberg used, his use of "marked" and "seriously limited" are consistent with Social Security regulations. (*See id.* at 645, testifying that Plaintiff had "marked" limitations in interacting with others because she was "seriously limited" in her ability to interact with others; *see also id.* at 614, "A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited," *but cf. id.*, "An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.") Thus, Dr. Greenberg's definition of a "marked" limitation as one that is "seriously limited" was not erroneous nor a reason to discount his opinion. Similarly, Dr. Greenberg's opinion that Plaintiff could have some contact with the public and coworkers despite being "markedly" limited in social functioning was not "inherently inconsistent," where he was accurately contrasting a marked limitation allowing "some" contact from an "extreme" limitation reflecting a "complete inability" to have contact with the public and coworkers. (*Id.* at 614, 617.) Accordingly, the ALJ erred by discounting Dr. Greenberg's opinion based on the language he used.

The Court also finds that the ALJ erred by assigning no weight to Dr. Greenberg's opinion that Plaintiff required a "reasonable accommodation" of unscheduled breaks due to her

PAGE 10 – OPINION AND ORDER

documented history of panic attacks. (*Id.* at 618.) The ALJ assigned no weight because Dr. Greenberg could not estimate how many unscheduled breaks Plaintiffs would require, but Dr. Greenberg was clear that Plaintiff would require unscheduled breaks upon the occurrence of a panic attack and substantial evidence in the record supports Dr. Greenberg's opinion. (*See, e.g.*, *id.* at 273, 275, 281, documenting Plaintiff's disability accommodations while attending Lane County Community College as a part-time student; *id.* at 273, 281, 285, 291, 293-94, 363, 366, treatment notes pre-dating December 5, 2014, reflecting Plaintiff's ADHD and anxiety symptoms and panic attacks; *id.* at 637-39, 657-60, Plaintiff testified about daily panic attacks while attending community college part-time and an inability to attend college without accommodations). The Court finds that it was error to disregard a medical expert's opinion about Plaintiff's need for reasonable accommodations. *See, e.g.*, *John M. v. Comm'r Soc. Sec. Admin.*, No. 3:20-cv-02133-AR, 2023 WL 155550, at *6 (D. Or. Jan. 11, 2023) (holding that the ALJ erred in failing to address the medical opinion evidence that the claimant "would need frequent unscheduled breaks" where the medical record demonstrated that the claimant's impairments would "require him to lay down and rest periodically" (citing *Ghanim*, 763 F.3d at 1166)); *French v. Kijakazi*, No. 21-cv-0092-BLM, 2022 WL 3362276, at *6 (S.D. Cal. Aug. 15, 2022) (finding that the ALJ erred by "ignoring [the medical provider's] findings of limitations regarding [the p]laintiff's need to shift at will and take unscheduled breaks"); *Rick W. v. Berryhill*, No. 1:17-cv-01435-YY, 2019 WL 3046120, at *7-8 (D. Or. May 22, 2019) (finding that "the ALJ failed to provide legally sufficient reasons for rejecting the opinion evidence of" the testifying expert who opined "that [the] plaintiff's symptoms would cause unscheduled breaks throughout the workday"), *findings and recommendation adopted*, 2019 WL 3037043 (D. Or. July 11, 2019); *cf. Bronson v. Berryhill*, No. 316CV00319LRHWGC, 2017 WL 2972331, at

PAGE 11 – OPINION AND ORDER

*11 (D. Nev. July 12, 2017) ("The court finds that the ALJ erred in failing to sufficiently address how much time of a workday would be taken up by Plaintiff using the restroom during unscheduled breaks, and whether or not this would preclude employment. Therefore, the matter should be remanded."), *report and recommendation adopted*, 2017 WL 3427963 (D. Nev. Aug. 9, 2017).

For all of these reasons, the Court finds that the ALJ harmfully erred by assigning no weight to Dr. Greenberg's opinion.

## II.    REMEDY

Plaintiff asks the Court to remand for further administrative proceedings or an immediate award of benefits. (Pl.'s Br. at 18-19; Pl.'s Reply Brief at 3-4.) The Commissioner does not address the appropriate form of remand in the event of error. (*See generally* Def.'s Br.)

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). In several cases, however, the Ninth Circuit "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit as-true standard is] met." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted).

PAGE 12 – OPINION AND ORDER

Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

### B.    Analysis

The Court concludes that the credit-as-true standard is satisfied here and remand for the payment of benefits is appropriate.

The Court concluded above that the ALJ failed to provide legally sufficient reasons for assigning no weight to Dr. Greenberg's medical opinion. The record has been fully developed, including treatment notes spanning the relevant time period, opinions from several medical sources, and Plaintiff's testimony about the severity and effects of her impairments. In addition, the Court previously found that "the ALJ inadequately supported the decision to assign December 5, 2014 as the onset date for Plaintiff's disabling impairments" (*Staci R.*, 2022 WL 17485583, at *4), and the Court provided the Commissioner an opportunity to reevaluate the onset date with the assistance of a testifying medical expert but the ALJ disregarded the medical expert's testimony in its entirety. The Court finds that further proceedings would serve no useful purpose here.[7]

Further, if Dr. Greenberg's medical opinion is credited as true, the record reflects that Plaintiff would require reasonable accommodations in the form of additional unscheduled breaks to work a normal workday and work week. (Tr. 638, 650-51.) The VE testified that "[i]f a person takes more than the standard[] breaks . . . that would not be competitive." (*Id.* at 668.) Indeed, the ALJ acknowledged that "reasonable accommodations such as stepping away and collecting herself within [fifteen] to [twenty] minutes . . . would certainly preclude sustaining regular full-

---

[7] The Commissioner did not argue or identify any useful purpose for further proceedings. (*See generally* Def.'s Br.)

PAGE 13 – OPINION AND ORDER

time employment based on how often she had to step away." (*Id.* at 618.) As a result of the VE's testimony (and the ALJ's acknowledgment of the impact of Plaintiff's need for accommodations), the ALJ would be required to find Plaintiff disabled on remand. *See Garrison*, 759 F.3d at 1022 n.28 (explaining "there is no need to develop the record or convene further administrative proceedings" where "the VE answered a question describing a hypothetical person with the RFC that the claimant would possess were the relevant opinion or testimony taken as true").

Finally, the Court does not have any serious doubt as to whether Plaintiff is disabled within the meaning of the Social Security Act. The ALJ found that Plaintiff was disabled as of December 5, 2014, as a result of Plaintiff's ADHD, bipolar type two disorder, and anxiety disorder. (Tr. 613.) The medical record does not reflect that Plaintiff's mental impairments materially changed on December 5, 2014, i.e., the date she applied for benefits. *See Staci R.*, 2022 WL 17485583, at *4 (finding that "the ALJ inadequately supported the decision to assign December 5, 2014 as the onset date for Plaintiff's disabling impairments"). On the contrary, the record supports that Plaintiff suffered from the same severe mental impairments for many years prior to that date and that she required significant accommodations to attend community college even on a part-time basis and still continued to experience frequent panic attacks.

For all of these reasons, the Court remands this case for the calculation and payment of benefits. *See, e.g.*, *Leitz v. Kijakazi*, No. 22-35356, 2023 WL 4342114, at *3 (9th Cir. July 5, 2023) ("The Government argues that we should remand for further proceedings rather than remand for an award of benefits. However, remand would serve no legitimate purpose . . . and permitting the Government to introduce additional evidence on remand would provide the Government with an unfair second opportunity to present its case. . . . We therefore remand to

the district court with instructions to remand to the agency for an award of benefits.") (citations omitted); *Hoffschneider v. Kijakazi*, No. 18-15504, 2022 WL 3229989, at *3 (9th Cir. Aug. 10, 2022) ("Once the improperly discredited evidence is credited as true, the vocational expert's testimony forecloses a determination that [the claimant] can work. Because no 'serious doubt' remains that [the claimant] is disabled, there is nothing left to decide. We therefore reverse and remand with instructions to remand to the Commissioner for a calculation and award of benefits.") (citations omitted); *Varela v. Saul*, 827 F. App'x 713, 714-15 (9th Cir. 2020) (reversing district court opinion remanding for further proceedings and instead remanding with instructions to "remand to the Commissioner of Social Security for an award of benefits" where "crediting [the treating physician's] opinion as true, there is no doubt that [the claimant] was disabled"); *Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "[t]he vocational expert concluded that an individual with [the claimant's] limitations, as described in the improperly discredited testimony . . . would be unable to perform competitive employment").

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for the calculation and payment of benefits.

**IT IS SO ORDERED.**

DATED this 2nd day of March, 2026.

*Stacie F. Beckerman*
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 15 – OPINION AND ORDER